**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**DARNELL A. ALLEN, JR.,**

        Petitioner,

v.                                                                                       Case No. 2:05-cv-16
                                                                                        (Judge Maxwell)

**THOMAS MCBRIDE, Warden,**

        Respondent.

## OPINION / REPORT AND RECOMMENDATION

On February 24, 2005, the Petitioner filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. Because it appeared that the Petition may be untimely, by Order entered April 5, 2005, the Court warned petitioner that his § 2254 petition would be recommended for dismissal unless he could demonstrate that the petition was timely filed.[1] On April 14, 2005, Petitioner responded to the Court's Order. After a review of Petitioner's supplemental information, it appeared that the Petition was in fact timely and the Respondent was directed to file an answer. The Respondent filed a Consolidated Answer and Motion for Summary Judgment on June 24, 2005. The Petitioner filed a Rebuttal Response in Opposition to the Respondent's motion on August 1, 2005. The Respondent filed a reply to Petitioner's rebuttal on August 11, 2005.

Accordingly, this matter, pending before me for an initial review and report and recommendation pursuant to LR PL P 83.01, et seq., is ripe for review.

---

[1] See Hill v. Braxton, 277 F.3d 701, 707 (4th Cir. 2002) ("When a federal habeas court, prior to trial, perceives a pro se § 2254 petition to be untimely and the state has not filed a motion to dismiss based on the one-year limitations period, the court must warn the prisoner that the case is subject to dismissal pursuant to § 2244(d) absent a sufficient explanation, unless it is indisputably clear from the material presented to the district court that the petition is untimely and cannot be salvaged by equitable tolling principles or any of the circumstances enumerated in § 2244(d)(1).")

# I. Procedural History

The Petitioner was found guilty of First Degree Murder by a jury sitting in the Mineral County Circuit Court. Petitioner was sentenced to life imprisonment without mercy. Petitioner appealed his conviction and sentence to the West Virginia Supreme Court of Appeals. Petitioners' appeal was granted and his conviction and sentence were affirmed by published opinion on June 22, 1998. See State v. Horton and Allen, 506 S.E.2d 46 (W.Va. 1998).

On April 5, 1999, the Petitioner filed a petition for writ of habeas corpus in the Circuit Court of Mineral County. Petitioner was appointed counsel and a Supplemental Petition was filed on May 21, 2002. An omnibus habeas corpus evidentiary hearing was held on February 2, 2004. Petitioners' state habeas petition was denied on February 17, 2004. Petitioner appealed that decision to the West Virginia Supreme Court of Appeals on August 11, 2004. By Order dated January 19, 2005, the Supreme Court refused Petitioner's appeal.

# II. Issues Presented

## A. Direct Appeal

On direct appeal of his conviction and sentence to the West Virginia Supreme Court of Appeals, Petitioner asserted the following errors at trial:

1) the court erred in admitting clothes taken from the appellant without his consent and in admitting the results of scientific tests conducted on those clothes;

2) the court erred in admitting oral statements by the appellant;

3) the court erred in admitting testimony showing plan and premeditation;

4) the court erred in denying appellants' motion for change of venue; and

5) the court erred in allowing the jury to see a gruesome videotape of the deceased and

the crime scene.

**B. <u>State Habeas Petition</u>**

In his petition for writ of habeas corpus in the Circuit Court of Mineral County, Petitioner asserted two grounds for relief:

1) that his due process rights were violated by the trial court's denial of his motion to suppress evidence derived from Petitioner's clothing taken from him by the police during their investigation and that the trial court's denial of his change of venue motion deprived him of an unbiased jury panel; and

2) that counsel was ineffective.

After counsel was appointed for Petitioner during his state habeas proceedings, counsel filed a Supplemental Petition raising only one claim of ineffective assistance of counsel, but citing numerous instances in support of that claim.

**C. <u>Habeas Appeal to West Virginia Supreme Court of Appeals</u>**

On appeal of the denial of his state habeas petition, the Petitioner asserted the following grounds for relief:

1) Counsel was ineffective for/regarding:

(A) failing to prepare for, or to develop, "mercy";

(B) failure to develop/argue diminished capacity;

(C) failure to object to the State's remarks concerning the victim's son;

(D) failure to address the State's failure to locate the murder weapon;

(E) failure to object to the State's reference to Petitioner's failure to testify;

(F) failure to object to the State's reference to the O.J. Simpson trial;

(G) failure to move to strike jurors for cause or to object to the trial court's leading questions;

(H) failure to request cautionary instructions;

(I) the crime scene video tape;

(J) failure to challenge the investigator's competency;

(K) reliance on the testimony of co-defendant Horton;

(L) failure to effectively cross-examine Lt. Roy;

(M) failure to object to rebuttal testimony of Chief of Police Ellifritz;

(N) failure to argue lack of Allen's footprints at the crime scene;

(O) failure to inquire about the co-defendant's Dallas Cowboys jacket;

(P) failure to call State Trooper Rapp as a witness;

(Q) failure to make effective use of Robert Martin's testimony;

(R) failure to object to the use of a stun belt.

(2) The affirmation of Petitioner's conviction in State v. Horton and Allen, 506 S.E.2d 46 (1998), by the West Virginia Supreme Court of Appeals, was plainly wrong.

## D. Federal Habeas Petition

Petitioners' federal habeas petition raises the same grounds presented to the West Virginia Supreme Court upon review of the denial of Petitioner's state habeas petition.

## E. Respondents' Contentions

In the respondent's consolidated Answer and Motion for Summary Judgment, the Respondent contends that Petitioner's claims were fully litigated in state court. The Respondent further asserts that the State of West Virginia's findings of fact and conclusions of law were not

contrary to clearly established federal law nor did they involve an unreasonable application of such law. Moreover, the Respondent asserts that the decisions of the state courts were not unreasonable in light of the facts and evidence presented in state court. Because Petitioner has failed to rebut the presumption of correctness afforded the findings of the state court in this case, there is no genuine issue as to any material fact with respect to Petitioner's claims and summary judgment should be granted in favor of the Respondent.

### III. Standards of Review

**A. Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977). So too has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly

probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir 1987). Such evidence must consist of facts which are material, meaning that the facts might affect the outcome of the suit under applicable law, as well as genuine, meaning that they create fair doubt rather then encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-588 (1986).

**B. Federal Habeas Review Under 28 U.S.C. § 2254**

Notwithstanding the standards which govern the granting of a motion for summary judgment, the provisions of 28 U.S.C. § 2254 must be examined to determine whether habeas relief is proper. Title 28 U.S.C. § 2254 requires a district court to entertain a petition for habeas corpus relief from a prisoner in State custody, but "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "[A]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The federal court may not grant habeas relief unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d)(1) and (2); see also Williams v. Taylor, 529 U.S. 362 (2000).

The Fourth Circuit Court of Appeals has determined that "the phrase 'adjudication on the

merits' in section 2254(d) excludes only claims that were not raised in state court, and not claims that were decided in state court, albeit in a summary fashion." Thomas v. Taylor, 170 F.3d 466, 475 (4th Cir. 1999). When a state court summarily rejects a claim and does not set forth its reasoning, the federal court independently reviews the record and clearly established Supreme Court law. Bell v. Jarvis, 236 F.3d 149 (4th Cir.), cert. denied, 524 U.S. 830 (2001)(quoting Bacon v. Lee, 225 F.3d 470, 478 (4th Cir. 2000)). However, the court must still "confine [it's] review to whether the court's determination 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Id. at 158.

A federal habeas court may grant relief under the "contrary to" clause "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently that this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A federal court may grant a habeas writ under the "unreasonable application" clause, "if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. "An unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410.

When a Petitioner challenges the factual determination made by a state court, "federal habeas relief is available only if the state court's decision to deny post-conviction relief was 'based on an unreasonable determination of the facts.'" 28 U.S.C. § 2254(d)(2). In reviewing a state court's ruling on post-conviction relief, we are mindful that 'a determination on a factual issue made by a State court shall be presumed correct,' and the burden is on the petitioner to

7

rebut this presumption 'by clear and convincing evidence.'" Tucker v. Ozmint, 350 F.3d 433, 439 (4th Cir. 2003).

However, habeas corpus relief is not warranted unless the constitutional trial error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); Richmond v. Polk, 375 F.3d 309 (4th Cir. 2004). "Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" Brecht, supra.

Here, Petitioner's claims were properly presented to the courts of the State. Because Petitioner's claims were adjudicated on the merits in State court, the State's findings of fact and conclusions of law are due the appropriate deference.

## C. Ineffective Assistance of Counsel

With regard to ineffective assistance of counsel claims, counsel's conduct is measured under the two part analysis outlined in Strickland v. Washington, 466 U.S. 668, 687 (1984). First, the petitioner must show that his counsel's performance fell below an objective standard of reasonableness. Id. at 688. In reviewing the reasonableness of counsel's performance, "judicial scrutiny must be highly deferential." Id. at 689-90. Second, if the Court finds that counsel's performance was unreasonable, Petitioner must then demonstrate that he was prejudiced. In order to demonstrate prejudice, "the defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694. A reasonable probability is a one that is "sufficient to undermine confidence in the outcome." Id.

## IV. Findings of the State Court

In denying the Petitioner's habeas corpus, the state court found, in relevant part:[2]

**Ground One - Ineffective Assistance of Counsel**

A. Mercy

That the evidence clearly showed that Petitioner desired counsel to present a "wrong man" defense and a mercy argument would have clearly undermined that defense. Moreover, had defense counsel attempted to present mitigating evidence in the form of testimony regarding Petitioner's character, the State could have introduced evidence of Petitioner's prior bad acts. Counsel's decision to focus on Petitioner's young age and opportunity for rehabilitation was clearly a tactical and strategic decision.

B. Diminished Capacity

There was not sufficient evidence for counsel to present this argument. The only evidence available to defense counsel was hearsay testimony that was likely inadmissible. In addition, defense counsel's belief that alcohol and marijuana use would harm Petitioner in the eyes of the jury was within the range of professionally competent assistance.

C. Location of Bat

A defense strategy centering on the lack of the murder weapon being found would have

---

[2] In the Order denying Petitioner habeas relief, the State court addressed several issues that were not raised in the instant Petition. For example, in Ground R of that Order, the State Court addressed an issue pertinent to the location of the victim's blood on Petitioner's cap and on the Co-defendant. This issue centered on the Petitioner's argument that defense counsel was ineffective for failing to develop facts that showed the defendants had broken up a fight earlier in the evening. Because this issue was not raised in the instant case, the Court will not address it in this Order.

been futile and insignificant in light of the overwhelming evidence against Petitioner.[3] Thus, counsel's failure to focus on the missing murder weapon was not unreasonable under the circumstances.

D. Prosecuting Attorney's Reference to Petitioner's Failure to Testify

The prosecuting attorney's comments on what Petitioner knew did not cross any lines.[4] Those statements were merely a comment on the lack of evidence presented by the defense and did not warrant an objection. Therefore, the failure to object was not unreasonable.

E. Reference to the O.J. Simpson Trial

Neither defense counsel nor the trial judge felt that the prosecutor's comments were impermissible. Thus, there was no ground for an objection. The prosecutor never specifically mentioned the O.J. Simpson trial nor did he ever try to draw a parallel to that trial. Instead, the prosecutor was merely commenting on the results of the DNA testing in Petitioner's case.[5]

---

[3] Petitioner was convicted of brutally beating a man to death with a baseball bat. At trial, the state elicited testimony that Petitioner had a grudge against the victim, that the Petitioner was seen at or near the crime scene at the time the beating occurred, that Petitioner was picked up by the police only two blocks from the crime scene shortly after the crime occurred, that the Petitioner had threatened the victim, that the Petitioner had asked an acquaintance about a bat he owned and that the bat in question was then missing, and that the victim's DNA was found on Petitioner's clothing.

[4] The prosecutor said: "Now Mr. Kuykendall [defense counsel] says Darnell Allen [Petitioner], when he is at the police station, he knew this. He knew that. He knew this. He knew that. Did anybody sit in the witness chair in front of this microphone and tell you anything Darnell Allen knew? No, nobody did." Petition at 5J. Petitioner construes these comments as an improper reference to the Petitioner's failure to testify. However, neither the prosecutor, nor the trial judge, either at the time of trial or during the state habeas proceedings, construed the comments in the same manner. Both defense counsel and the trial judge believed that the prosecutor was merely pointing out that the defense lacked evidence to support it's contention that the police had the wrong man.

[5] The prosecutor said: "And Mr. Kuykendall did his homework, but you didn't hear one single, solitary person, expert or otherwise, come into this courtroom and tell you Trooper Myer's tests were done wrong. Trooper Myers' were wrong. Trooper Myers' statistics were wrong. And, anybody who has watched television in the last six months knows that those people aren't hard to find.
And, you would also have to believe that the Keyser City Police had such a problem with Darnell Allen that they were willing to plant this blood on his hat and ignore the fact that we have got two other killers running around Keyser. Planting of evidence. Its been a very popular notion the last six months as well." Petition at 5K.

10

F. Failure to Request a Cautionary Instruction

Even if defense counsel should have requested a cautionary instruction with regard to the 404(b) evidence,[6] such error was harmless because it would have made no difference in the outcome of the trial. The West Virginia Court of Appeals found that the 404(b) evidence was properly admitted. That evidence, combined with the other evidence at trial, overwhelming established Petitioner's guilt. Therefore, a cautionary instruction would not have affected the outcome of the trial.

G. Video Tape

Even though Petitioner's trial counsel did not request a cautionary instruction with regard to the crime scene video tape, counsel did object to the video being admitted at all. And, on direct appeal, the West Virginia Supreme Court found that the video tape was properly admitted. Additionally, even if defense counsel should have also requested a cautionary instruction, the failure to do so was not ineffective because in light of the overwhelming evidence educed at trial, a cautionary instruction would have made no difference in the outcome of the trial.

H. Failure to Strike Jurors for Cause

With regard to Jurors Hill, Shillingburg and Ravenscroft, counsel was not ineffective for failing to strike those jurors for cause as each testified that they knew the Defendant's father and that they might have a hard time convicting him. As to Juror Baker, even though that Juror had served Officer Roy in her job as a waitress, she expressed no bias toward the police officer and

---

[6] Rule 404(b) of the West Virginia Rules of Evidence states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . ." Here, the prosecution introduced evidence that Petitioner had threatened the victim twice in the three or four month period preceding the victim's death.

11

there were no grounds to strike her. As to Petitioner's assertion that the Court asked the Jurors leading questions,[7] the laws of the State allow the trial judge to rehabilitate potential jurors and trail counsel stated that he did not believe that the trial court did anything improper or harmful to the Petitioner's case. Accordingly, the failure to strike Jurors Hill, Shillingburg, Ravenscroft and Baker was not ineffective nor was counsel's failure to object to the trial courts questioning. The decisions made by defense counsel during jury selection were tactical and strategic decisions that should not be second-guessed.

I. Failure to Attack the Ability or Professionalism of the Investigator

Petitioner pulls bits and pieces of the investigation that would, by themselves, appear beneficial to Petitioner's cause. Yet, when taken in light of the totality of the evidence and testimony, that information actually had the potential to be harmful to Petitioner's case because it would have brought about additional information regarding the brutality of the crime.

J. Testimony of Co-Defendant Horton

Petitioner was aware at all times that his co-defendant could assert his Fifth Amendment right to remain silent at any time. Petitioner had ample time to meet with, and discuss, trial tactics with his defense counsel prior to trial. The co-defendants assertion of his Fifth Amendment Rights 15 minutes prior to testifying did not merit a continuance. Petitioner was advised of his rights on record during his trial.

K. Testimony of Lt. Roy

---

[7] After finding out that Juror Anthony Delsignore was a relative of Aaron Delsignore, the person who owned the missing bat that the prosecution believed was used as the murder weapon, and that he knew the Petitioner's father and uncle, the trial judge asked Mr. Delsignore if he could still be impartial even if he may have heard somebody say in his presence something like "oh my god, that was awful what happened." Petitioner argues that this "dramatic exclamation" surely biased the jury pool.

The Petitioner is attempting to second-guess the trial tactics of defense counsel by asserting that counsel did not effectively or aggressively cross-examine Lt. Roy. However, the trial transcripts reveal that defense counsel did vigorously cross-examine Lt. Roy. The court will not second-guess the trial strategies of defense counsel.

L. Rebuttal Testimony of Chief of Police Ellifritz

During redirect of this witness, the prosecuting attorney properly asked questions requiring a yes or no answer. There was no need for defense counsel to object and the failure to not do so was not ineffective. The Court will not second-guess the trial tactics of defense counsel.

M. Lack of Petitioner's Footprints at Crime Scene

Petitioner bases his entire argument in this ground on the fact that defense counsel in co-defendant Horton's trial argued the lack of footprints. Comparing the trial strategies of two different defense attorneys in similar cases is not proper. Defense tactics should not be second-guessed.

N. Failure to Inquire About Co-Defendant's Dallas Cowboys Jacket

Petitioner is again second-guessing the trial strategy of defense counsel by asserting that counsel should have argued that the eyewitness failed to identify co-defendant Horton's Dallas Cowboys Jacket even though it was distinctive and easily recognizable. Petitioner bases his argument on the fact that defense counsel for co-defendant Horton made this argument at the co-defendants trial. Comparing the trial strategies of the two defense attorneys is not proper. Additionally, this ground is not sufficient to change the outcome of the trial.

O. Treatment of Trooper Rapp

Petitioner argues that his defense counsel should have called Trooper Rapp to testify like co-defendant Horton's defense counsel did during his trial. However, once again, comparing the trial strategies of two different defense attorneys in similar cases is not proper. Defense tactics should not be second-guessed.

P.  Testimony of Chief Ellifritz at Preliminary Hearing

The inconsistencies in Chief Ellifritz's testimony were minor. Such minor inconsistencies would not have affected the outcome of the trial or the credibility of the witness.

Q. Treatment of Robert Martin Testimony

Petitioner cannot base an ineffective assistance of counsel claim on the different tactics used by defense counsel at a preliminary hearing and during a trial. The evidence at the two proceedings was different, and therefore, warranted different strategies

S.  Use of Stun Belt

Petitioner and his counsel agreed that Petitioner would wear the stun gun belt because Petitioner's recent violent behavior while in custody required some restraint. Rather than handcuffs or shackles which can easily be seen by the jury, the parties agreed that a stun gun belt worn under Petitioner's clothing would be a better choice. The stun gun belt could not be seen by the jury and the jury had no knowledge that Petitioner was under restraint. Even if the use of the stun gun belt was improper, this issue should have been raised on direct appeal and is now waived.

**Ground II - Affirmation of Petitioner's Conviction by the W.V. Supreme Court was Wrong**

With regard to Petitioner's claim that the affirmation of his conviction by the Supreme Court of West Virginia was clearly wrong, the trial court simply stated that it would not second

guess the decision of the West Virginia Court of Appeals.

## V. Analysis

Upon an independent review of the record, the state court's adjudication of Petitioner's claims of ineffective assistance of counsel was not contrary to clearly established federal law as the state court specifically cited Strickland as the appropriate standard for reviewing the claims. Additionally, in light of the evidence presented in the state court proceedings, this Court does not believe that the state court's adjudication of the claims involved an unreasonable application of clearly established federal law, nor do the state court's findings result in a decision that is based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

With respect to the Petitioner's ineffective assistance of counsel claims, at one point in the Order denying Petitioner state habeas relief, the State court appropriately notes that "Petitioner seems to be arguing the fine details of his trial in an attempt to discredit the competent assistance he received from trial counsel. Trial tactics, strategies, and techniques must not be second-guessed by [a reviewing court]." Ex. 8 at 17. This Court finds that statement exceedingly accurate. The majority of the ineffective assistance of counsel claims raised by the Petitioner require the court to second-guess the trial strategies of defense counsel. It is not the purpose of this Court to engage in 20/20 hindsight.

Additionally, the undersigned notes that Petitioner alternates between presenting bits and pieces of the trial testimony and presenting only partial facts. However, ineffective assistance of counsel claims are viewed in light of each individual claim and based on the totality of the representation. Counsel in this case pursued a particular strategy. The fact that Petitioner's

counsel employed a different strategy than co-defendant Horton's does not make either counsel necessarily ineffective.[8] Nor does the fact that the Petitioner and his co-defendant were both convicted. An unsuccessful defense counsel is not the same as an ineffective one.

Alternately, even if counsel was ineffective in some small respects as Petitioner claims, the outcome of the trial would not have been different. As noted by the State court, the evidence against Petitioner was overwhelming. It was well known that Petitioner had a grudge against the victim and that the Petitioner had previously threatened the victim. Petitioner was found near the scene of the crime shortly after it occurred and matched the description of one of the perpetrators given by an eyewitness. The victim's blood and skin were found on the clothing of both the Petitioner and his co-defendant. Finally, the day before the victim was beaten to death, Petitioner asked an acquaintance if he could borrow a baseball bat he kept in the trunk of his car. That bat disappeared that night and neither it, nor the murder weapon, was ever found. Thus, Petitioner has failed to show that any ineffectiveness on the part of defense counsel was prejudicial.

With respect to the Petitioner's claims that the affirmation of his conviction by the West Virginia Supreme Court of Appeals was plainly wrong, that claim has not been properly pled as noted by the Respondent in his Answer and Motion. Answer at 15. Petitioner does not set forth any factual or legal argument in support of his claim. Also, as further noted by the Respondent, it appears as if the Petitioner would like this Court to act as an appellate court to the West

---

[8] Curiously, Petitioner believes that his counsel was ineffective for not employing the same defense tactics as co-defendant Horton's counsel. However, the Court notes that co-defendant Horton was also found guilty of first degree murder without a recommendation of mercy. See State v. Horton and Allen, supra. This fact in and of itself belies Petitioner's argument that he was prejudiced by the failure of his counsel to employ the same techniques and strategies as his co-defendants counsel.

Virginia Supreme Court of Appeals. However, that is not the purpose of this Court on federal habeas review. Nevertheless, because Petitioner has not established that the decision of the West Virginia Supreme Court of Appeals was contrary to or involved an unreasonable application of federal law, this ground should be denied.

Finally, it does not appear as if the state court ever specifically addressed Petitioner's claim that defense counsel was ineffective for failing to object to the prosecutor's remarks about the victim's son. However, the undersigned fails to see how defense counsel was ineffective for failing to object to a few passing references to the victim's son. The majority of those references were made by witnesses during testimony about the victim's movements on the night he died and/or by other witnesses describing what happened on the night of the victim's death. See Petition at 5G-5H. And, again, taken in the context of the entire trial, even if defense counsel should have objected to those remarks, the remarks did not affect the outcome of the trial.

## VI. RECOMMENDATION

For the reasons set forth in this Opinion, it is recommended that the petitioner's § 2254 petition be denied on the merits and DISMISSED WITH PREJUDICE.[9]

Within ten (10) days after being served with a copy of this recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right

---

[9] For the reasons set forth by the respondent in his Reply to the Petitioner's Rebuttal Response (Doc. 16), any additional claims not specifically raised in the Petition should also be denied.

to appeal from a judgment of this Court based upon such recommendation.[10]

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* Petitioner and any counsel of record.

Dated: December 20, 2005

/s *John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE

---

[10] 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).